LAW OFFICE OF SHARON L. LAPIN
SHARON L. LAPIN SBN 165919
110 LOCH LOMOND DR.
SAN RAFAEL, CA 94901
PHONE: (415) 258-1651; FAX: (916) 258-0326
e-mail: lapinlaws@juno.com

Attorney for Plaintiff

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

KIAMARS AZIZKHAN,

      Plaintiff,

v.

FIRST FRANKLIN LOAN SERVICING;
CAL-WESTERN RECONVEYANCE
CORPORATION; MORTGAGE
ELECTRONIC REGISTRATION
SYSTEMS, INC.; ANCHOR FINANCIAL
MORTGAGE COMPANY, INC.; RYAN N.
SMITH;
and DOES 1-20 inclusive,

      Defendants.
_____/

CASE NO.

COMPLAINT FOR:

1. VIOLATION OF THE TRUTH IN
   LENDING ACT (15 U.S.C. § 1601 et
   seq.)
2. VIOLATION OF CALIFORNIA
   ROSENTHAL ACT
3. NEGLIGENCE
4. VIOLATION OF REAL ESTATE
   SETTLEMENT PROCEDURES ACT
   (12 U.S.C. § 2605 et seq.)
5. BREACH OF FIDUCIARY DUTY
6. FRAUD
7. VIOLATIONS OF CALIFORNIA
   BUSINESS & PROFESSIONS CODE §
   17200 et seq.
8. BREACH OF CONTRACT
9. BREACH OF IMPLIED COVENANT
   OF GOOD FAITH AND FAIR
   DEALING
10. WRONGFUL FORECLOSURE

DEMAND FOR JURY TRIAL

1  Plaintiff Kiamars Azizkhan ("Plaintiff"), by and through his counsel, for his Complaint

2  against Defendants First Franklin Loan Servicing ("First Franklin"), Cal-Western Reconveyance

3  Corporation ("Cal-Western"), Mortgage Electronic Registration Systems, Inc. ("MERS"),

4  Anchor Financial Mortgage Company, Inc. ("Anchor"), Ryan N. Smith ("Smith") (collectively

5  "Defendants"), pleads as follows:

6  **JURISDICTION AND VENUE**

7  1.  This Court has subject matter jurisdiction based on federal question under 28

8  U.S.C. §§ 1331 and 1367, 18 U.S.C. § 1964(c) and 15 U.S.C. § 1640(e).  This is an action

9  asserting violations of federal statutes commonly known as the Truth In Lending Act ("TILA")

10  (15 U.S.C. § 1601 et seq.), the Real Estate Settlement Procedures Act ("RESPA") (12 U.S.C. §

11  2601 et seq.) and its implementing regulations, 12 C.F.R. Part 226, et seq. ("Regulation Z"), with

12  additional claims under California state law.  These claims all arise out of the same controversy

13  and sequence of events.

14  2.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) in that a

15  substantial part of the events giving rise to the claim occurred in this judicial district.

16  3.  This Court has personal jurisdiction over the parties as all Defendants engage in

17  business within the State of California and the Eastern District and thus have sufficient contacts.

18  4.  Jurisdiction of this Court for the pendent state claims is authorized by Federal

19  Rule of Civil Procedure 18(a).

20  5.  Defendants, and each of them, regularly engage in business in the State of

21  California and regularly provide mortgage loans and related services to residents in the State of

22  California who wish to obtain a mortgage loan, and who contact or are contacted by a loan

23  officer for assistance in obtaining the necessary financing.

24  6.  Plaintiff bring this action against Defendants for damages and harm resulting from

25  the Defendants' negligent, fraudulent and unlawful conduct concerning a residential mortgage

26  loan transaction with the Plaintiff.  The residential mortgage concerned the property located at

27  3590 Farron Street, Rocklin, County of Placer, State of California.

28  //

## PARTIES

7.     The residential property, subject to this Complaint, is located at 3590 Farron Street, Rocklin, County of Placer, State of California ("Property").

8.     Plaintiff is informed and believes, and thereon alleges that at all times mentioned in this Complaint, Defendants First Franklin, MERS, and Cal-Western, are diversified financial marketing and/or services corporations engaged primarily in residential mortgage banking and/or related businesses.

9.     Plaintiff is informed and believes, and thereon alleges that Defendant MERS is a Delaware corporation engaged in the business of holding title to mortgages. It does business in California as evidenced by inclusion of its name on the Deed of Trust. Defendant MERS was not registered to do business in California, and its agent for service of process resigned March 25, 2009. The Deed of Trust in this case states:

> "The beneficiary of this security instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This security instrument secures to Lender (i) repayment of the Loan and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and Note. For this purpose, the Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale the following described property.

10.    Plaintiff is informed and believes, and thereon alleges that Defendant MERS' conduct, with respect to the Promissory Note and the Deed of Trust in this case, is governed by "MERS Terms and Conditions" applicable to Defendants which state that:

> "MERS shall serve as mortgagee of record with respect to all such mortgage loans solely as a nominee, in an administrative capacity, for the beneficial owner or owners thereof from time to time. MERS shall have no rights whatsoever to any payments made on account of such mortgage loans, to any servicing rights related to such mortgage loans, or to any mortgaged properties securing such mortgage loans. MERS agrees not to assert any rights (other than rights specified in the Governing Documents) with respect to such mortgage loans or mortgaged properties. References herein to "mortgage(s)" and "mortgagee of record" shall include deed(s) of trust and beneficiary under a deed of trust and any other form of security instrument under applicable state law."

11.    As a result of said express conditions, and pursuant to California Commercial Code §§ 1201(21), 3301, and 3309, Defendant MERS has no beneficial interest or right to

enforce the terms of the Promissory Note, because it is not in possession of the Promissory Note, and has no authority to conduct a non-judicial foreclosure sale.

12.    Plaintiff is informed and believes, and thereon alleges that at all times mentioned in this Complaint, Defendants Anchor, Smith and Smith sold Plaintiff the mortgage involved herein.

13.    Plaintiff is informed and believes, and thereon alleges that at all times mentioned in this Complaint, Defendant Smith was the loan officer who sold Plaintiff the mortgage at issue. Defendant Smith held himself out to Plaintiff as a loan officer employed by Defendant Anchor, and was acting within the course and scope of that employment when he came into contact with Plaintiff and sold Plaintiff the mortgage at issue.

14.    Plaintiff is informed and believes, and thereon alleges that at all times mentioned in this Complaint, Defendant Smith was a real estate Broker licensed by the State of California Department of Real Estate, and the Broker of record for Defendant Anchor.

15.    Plaintiff is ignorant of the true names and capacities of the Defendants sued herein under the fictitious names Does 1 through 20, inclusive, and Plaintiff will amend this Complaint to allege such names and capacities as soon as they are ascertained.  Plaintiff is informed and believes, and thereon alleges that each of said fictitiously named Defendants are responsible in some manner for the wrongful acts complained of herein.

16.    Plaintiff is informed and believes, and thereon alleges that Defendants, and each of them, at all relevant times herein were and still are agents for one another, and acting under the course and scope thereof, with knowledge and consent of each other.

## GENERAL ALLEGATIONS

17.    This action arises out of a loan related activity to the Property of which the Plaintiff is the rightful owner.

18.    Plaintiff is informed and believes, and thereon alleges that beginning in 1998, and such facts are so well known as to be Judicially Noticeable under Federal Rule of Evidence 201 and California Evidence Code §§ 451 and 452, lenders, their agents, employees, and related servicers, including Defendants, developed a scheme to rapidly infuse capital into the home

mortgage lending system by selling mortgages on the secondary market, normally three to five times, to create a bankruptcy remote transaction. The lenders, their agents, employees, and related servicers, including Defendants, then pooled these mortgages into large trusts, securitizing the pool and selling these securities on Wall Street as mortgage backed securities, bonds, derivatives and insurances, often for twenty or thirty times the original mortgage.

19.     Plaintiff is informed and believes, and thereon alleges that in "selling" these mortgage notes on the secondary market, Defendants failed to follow the basic legal requirements for the transfer of a negotiable instrument and an interest in real property. While lenders could have simply gone to Congress to amend existing law so that it would allow for their envisioned transfers, they did not. Instead the Defendants simply ignored the legal requirements.

20.     Plaintiff is informed and believes, and thereon alleges that in fact, no interest in the Mortgage Note, Deed of Trust or Property was ever legally transferred to any of the Defendants, and that the Defendants are in effect straw men, and parties without any standing before this Court to assert legal rights with respect to this contractual transaction.

21.     Further, Plaintiff is informed and believes, and thereon alleges that as this process became more and more profitable, the underwriting requirements were repeatedly reduced to ensure more and more unsuspecting borrowers. As the lenders reduced the underwriting requirements, they introduced the concept of "churning" loans involving a calculated plan to repeatedly refinance borrowers' loans, taking as much equity as possible, and artificially driving up housing prices.

22.     Plaintiff is informed and believes, and thereon alleges that lenders, Defendant First Franklin included, regularly trained, directed, authorized and/or participated with mortgage brokers to implement this scheme, giving them monetary incentives to violate the borrowers' trust.

23.     In or about April 2007, Defendant Smith approached Plaintiff telling him that he was the loan officer for Defendant Anchor, and solicited him to purchase his residence.

24.     Defendant Smith advised Plaintiff that he could get him the "best deal" and the "best interest rates" available on the market. Defendant Smith knew or should have known that

these assurances were false and misleading.

25.     Plaintiff advised Defendant Smith that he did not want a prepayment penalty attached to his loan. Defendant Smith assured Plaintiff that no prepayment penalty would be attached to his loan, a representation Defendant Smith knew or should have known was false and Defendant Smith knew or should have known was designed to induce Plaintiff to accept this loan to his detriment.  Unfortunately, Plaintiff has recently discovered that the loan sold to him contained a provision for a two year prepayment penalty.

26.     Defendant Smith advised Plaintiff that he could get him 100% financing for his residence, that his loans would be a fixed rate loans at 7.752% and 7% interest for 30 years. However Defendant Smith actually sold Plaintiff two loans with an adjustable rate riders that would negatively amortize with large balloon payments and two year prepayment penalties.

27.     Defendant Smith further advised Plaintiff that if the loan ever became unaffordable, he would simply refinance it into an affordable loan, something Defendant Smith knew or should have known was false and misleading.  Defendant Smith knew or should have known that these misrepresentations were designed to induce Plaintiff to accept this loan to his detriment.

28.     Plaintiff was not given a copy of any of the loan documents prior to closing as required.  At closing, Plaintiff was only given a few minutes to sign the documents.  The notary did not explain any of the loan documents nor was Plaintiff allowed to review them.  Plaintiff was simply told to sign and initial the documents provided by the notary.  Further, Plaintiff did not receive the required copies of a proper notice of cancellation.

29.     The facts surrounding this loan transaction were purposefully hidden to prevent Plaintiff from discovering the true nature of the transaction and the documents involved therein. Facts surrounding this transaction continue to be hidden from the Plaintiff to this day.

30.     On or about April 6, 2007, Plaintiff completed the loan on the Property. The terms of the loan were memorialized in a Promissory Note, which was secured by a Deed of Trust on the Property.  The Deed of Trust identified Chicago Title Company as Trustee, and Defendant First Franklin as Lender.

31.     The Deed of Trust also identified Defendant MERS as nominee for the Lender and Lender's successors and assigns, and the beneficiary.  Plaintiff is informed and believes, and thereon alleges that Defendant MERS has no standing in this forum.  It is not licensed to be and/or act as a nominee or a beneficiary of any of the Defendants, nor does its Terms and Conditions, enumerated above, permit Defendant MERS to act in such capacity.  Defendant MERS was developed to be a document storage company, not a nominee or a beneficiary of any of the Defendants.  Therefore, the Deed of Trust must fail.  Further, Plaintiff is informed and believes, and thereon alleges that Defendant MERS was not licensed to do business in the State of California, and was not registered with the State of California at the inception of the loan involved herein.

32.     On or about August 24, 2009, a Qualified Written Request under RESPA ("QWR" or "Request") was mailed to Defendant First Franklin.  The QWR included a demand to rescind the loan under the TILA provisions.  Defendant First Franklin has yet to properly respond to this Request.

33.     On information and belief, Plaintiff alleges that each of the Defendants is not a "person entitled to enforce" the security interest under the Note and the Deed of Trust, as defined in California Commercial Code § 3301.  Plaintiff alleges that Defendants sold home loans, Plaintiff home loan included, to other financial entities, which "pooled" large numbers of loans, put them into trusts, and sold securities based on such loans.  Plaintiff alleges that Defendants do not own the loan subject to this action, and are not entitled to enforce the security interest.

34.     On information and belief, Plaintiff alleges that Defendants regularly approved loans to unqualified borrowers and implemented unlawful lending practices.  Further, Plaintiff alleges that Defendant First Franklin employed brokers and loan officers who were paid commissions based on the volume of loans they sold to consumers, Plaintiff included.  Plaintiff alleges that Defendant First Franklin's loan officers received a greater commission or bonus for placing borrowers in loans with relatively high yield spread premiums.  As such, borrowers, Plaintiff included, were steered and encouraged into loans with terms unfavorable to them, or loans which the borrowers, Plaintiff included, were not qualified to obtain.

35. Defendants are attempting to obtain putative legal title to Plaintiff's Property without having established that either of them was ever a "person entitled to enforce" the security interest under the Note and the Deed of Trust.

36. Upon information and belief, Plaintiff contends that each Defendant, in fact, is not a "person entitled to enforce" said interest. Upon information and belief, Plaintiff contends that no legal transfer of the Mortgage Note, Deed of Trust or any other interest in Plaintiff's Property was effected that gave any of the Defendants the right to be named a trustee, mortgagee, beneficiary or an authorized agent of trustee, mortgagee or beneficiary of Plaintiff's Mortgage Note, Deed of Trust or any other interest in Plaintiff's Property.

37. Plaintiff entered into a loan transaction with Defendant First Franklin, which was subject to finance charges, and which was initially payable to Defendant First Franklin under the Deed of Trust.

38. Plaintiff Loan is subject to TILA provisions and its implementing regulations, 12 C.F.R. Part 226 ("Regulation Z"). TILA grants consumers a three-day right to cancel certain types of real estate loan transactions. This three-day right to cancel applies to Plaintiff's Loan with the Defendants.

39. When the loan was consummated, Plaintiff did not receive the required documents and disclosures, including, but not limited to the TILA disclosure, and the required number of copies of the Notice of Right to Cancel stating the date that the rescission period expires.

40. Under TILA and Regulation Z, Defendants were required to clearly and conspicuously disclose the "amount financed" and the "finance charge," among other things, in connection with the Loan.

41. Defendants First Franklin and Smith, as agents of the Lender, were required to provide Plaintiff with said disclosures, but failed to do so.

42. On or about February 12, 2009, a Notice of Default was filed in Placer County, California, by Defendant Cal-Western. This notice, however, identified Defendant Cal-Western as either the original Trustee (which it was not), the substitute Trustee or acting as agent for the Beneficiary under the Deed of Trust. The notice failed to explain when, how or under what

authority Defendant Cal-Western became a substitute Trustee or an agent for the Beneficiary.

43.     On or about May 19, 2009, Defendant Cal-Western noticed the Trustee Sale of the Property.  This notice now identified Cal-Western as the duly appointed Trustee under the Deed of Trust.  Again, the notice failed to explain when, how or under what authority Defendant Cal-Western was appointed Trustee.  Plaintiff alleges both the Notice of Default and the Notice of Trustee Sale are defective.

44.     On information and belief, Plaintiff alleges that in all of the wrongful acts alleged herein, Defendants, and each of them, have utilized the United States mail, telephones and internet in furtherance of their pattern of unlawful and illegal conduct to collect on negotiable instruments when they were not entitled to do so.

45.     Further, Defendants fraudulently added costs and charges to the payoff amount of the Note that were not justified or proper under the terms of the Note or the law.

46.     In pursuing the non-judicial foreclosure, Defendants represented that they have the right to payment under the Mortgage Note, payment of which was secured by the Deed of Trust.  Whereas in fact, Defendants, and each of them, are not the real parties in interest because they are not the legal trustee, mortgagee or beneficiary, nor are they authorized agents of the trustee, mortgagee or beneficiary, nor are they in possession of the Note, or holders of the Note, or non-holders of the Note entitled to payment, as required by the California Commercial Code §§ 3301 and 3309, and California Civil Code § 2924 et seq.  Therefore, Defendants instituted foreclosure proceedings against  Plaintiff Property without rights under the law.

47.     Due to the conspiratorial nature of the misdeeds alleged herein, and due to Defendants' failure to properly advise Plaintiff regarding the roles and identities of the various entities that were purportedly handling his Loan at any given time, these allegations are generally plead as to all Defendants.

48.     On information and belief, Plaintiff alleges that Defendants misrepresented material facts with the intent of forcing Plaintiff to either pay large sums of money to the Defendants, to which they were not entitled, or to abandon the Property to a foreclosure sale, resulting in profit for the Defendants.

49.     The misrepresentations and allegations stated herein were all discovered within the past year, such that any applicable statute of limitations are extended or should be extended pursuant to the equitable tolling doctrine or other equitable principles.

**FIRST CAUSE OF ACTION**

**VIOLATION OF TRUTH IN LENDING ACT**

**15 U.S.C. § 1601 et seq.**

**(Against Defendant First Franklin)**

50.     Plaintiff incorporates here each and every allegation set forth above.

51.     The Loan transaction at issue is a consumer credit transaction subject to the provisions of TILA.

52.     TILA grants consumers a three-day right to cancel certain residential mortgage loan transactions.  Pursuant to 15 U.S.C. § 1635(a), the three-day cancellation period begins upon the latter of the following events: (1) the "consummation of the transaction"; (2) the "delivery of the information and rescission forms" required by that section; or (3) delivery of accurate "material disclosures" required by TILA.  (15 U.S.C. § 1635(a).)  The "material disclosures" that must be provided to the consumer include accurate disclosure of the annual percentage rate, all finance charges and the amount financed.  (15 U.S.C. § 1602(u).)

53.     If the required notice of cancellation is not provided, or if the required "material disclosures" are not delivered, then the right to cancel extends to three years after the date of the loan, or if the facts of the transaction were hidden from the consumer, three years from the date consumer discovered the hidden facts.  (15 U.S.C. § 1635(f).)  If a consumer has the right to rescind against a creditor, the right will also apply to any assignees of that creditor.  (15 U.S.C. § 1641(c).)

54.     A consumer may exercise their right to cancel a transaction by delivering a written notification of the consumer's intent to rescind to the creditor's place of business.  (12 C.F.R. § 226.23(a)(2).)  The consumer's notice to rescind is effective upon mailing.  The notice mailed to the agent servicing the loan is effective notice on the holder of the mortgage.  (12 C.F.R. § 226.23(a)(2).)

55.     When a consumer rescinds a mortgage transaction, the security interest giving rise to the right of rescission becomes void and the consumer is not liable for any amount, including any finance or other charge.  (15 U.S.C. § 1635(b).)

56.     Within twenty (20) days after the receipt of a consumer's election to cancel the transaction, the creditor must return to the consumer all money or property given, including all interest and finance charges paid, and shall take all action necessary or appropriate to reflect the termination of any security interest created under the transaction.  (15 U.S.C. § 1635(b); 15 C.F.R. § 226.23(d).)

57.     Defendant First Franklin is a "creditor" as that term is defined by 15 U.S.C. § 1602.  The transaction between Plaintiff and Defendant First Franklin was a consumer loan transaction wherein Defendant First Franklin extended credit to the Plaintiff, and such credit was secured by an interest purportedly held by Defendant First Franklin in the Property.

58.     As a consumer credit transaction, Defendant First Franklin was required to provide Plaintiff with the mandatory TILA disclosure statements and the notice of the Plaintiff's right to rescind, specifying the date on which the three-day rescission period expires.

59.     In the course of the transaction described herein, Defendant First Franklin violated TILA in numerous ways, including, but not limited to: (a) failing to provide required disclosures prior to consummation of the transaction; (b) failing to make required disclosures clearly and conspicuously in writing; (c) failing to timely deliver to Plaintiff notices required by TILA; (d) placing terms prohibited by TILA into the transaction; and (e) failing to disclose all finance charge details and the annual percentage rate based upon properly calculated and disclosed finance charges and amounts financed.

60.     Records from the transaction indicate that Defendant First Franklin extended credit to Plaintiff without regard to his ability to pay, and falsified requisite income and appraisal information to get the loan approved.  Plaintiff is informed and believes, and thereon alleges that Defendant First Franklin has engaged in a pattern and practice of extending credit to consumers, Plaintiff included, under high rate mortgages without regard to the consumers' repayment ability or the actual value of the property.

61.     Because of these violations, Plaintiff has a continuing right to rescind the loan transaction for up to three years after consummation of the transaction pursuant to 15 U.S.C. § 1635(a) and (f) and 15 C.F.R. § 226.23(b)(5).  Plaintiff hereby gives notice of rescission by and through this Complaint.

62.     Because of these violations, Defendant First Franklin is liable to the Plaintiff in the amount of twice the finance charge, actual damages to be established at trial, and costs in accordance with 15 U.S.C. § 1640(a).  Plaintiff is also entitled to the following: rescission of the loan transaction; an order requiring Defendants to take any and all actions necessary to terminate any security interest in the Property, and a declaration by the Court that the security interest is void; expungement of any and all foreclosure instruments, including but not limited, to any Notice of Default or Notice of Trustee's Sale relating to Plaintiff's Property from any public record; removal of any and all derogatory information reported to any and all credit reporting agency or bureau relating to the transaction involved herein; the return to the Plaintiff of any money given by the Plaintiff to any of the Defendants in connection with the Loan transaction; statutory damages; costs and reasonable attorneys' fees; and such other relief as the Court may deem just and proper.

63.     As a result of Defendant First Franklin's conduct, Plaintiff has suffered and continues to suffer damages in an amount to be proven at trial, which he is entitled to recover.

64.     Moreover, Defendant First Franklin's misconduct was done in conscious disregard of Plaintiff's rights, and was willful, malicious, and outrageous.  Therefore, punitive damages are warranted and demanded.

65.     As a result of Defendant First Franklin's misconduct, the Loan was void and unenforceable at its inception.  Therefore, Plaintiff is entitled to rescind the loan agreement and the Promissory Note, and does hereby demand rescission.

66.     As a result of Defendant First Franklin's conduct, Plaintiff is entitled to declaratory and injunctive relief preventing Defendant First Franklin from taking any action to collect on the loan, and/or to foreclose upon the Property, and/or to transfer the Property.

//

# SECOND CAUSE OF ACTION

## VIOLATION OF CALIFORNIA ROSENTHAL ACT

## CALIFORNIA CIVIL CODE § 1788 et seq.

### (Against Defendant First Franklin)

67.     Plaintiff incorporates here each and every allegation set forth above.

68.     Plaintiff alleges that Defendant is a debt collector within the meaning of the Rosenthal Act in that they regularly, in the course of their business, on behalf or themselves or others, engage in the collection of debt.

69.     Defendant's actions constitute a violation of the Rosenthal Act in that they threatened to take actions not permitted by law, including but not limited to the following: collecting on a debt not owed to the Defendant, making false reports to credit reporting agencies, foreclosing upon a void security interest, foreclosing upon a Note of which they were not in possession nor otherwise entitled to payment, falsely stating the amount of a debt, increasing the amount of a debt by including amounts that are not permitted by law or contract, and using unfair and unconscionable means in an attempt to collect a debt.

70.     Defendant's actions have caused Plaintiff actual damages, including, but not limited to, severe emotional distress, such as loss of appetite, frustration, fear, anger, helplessness, nervousness, anxiety, sleeplessness, sadness and depression.

71.     As a result of Defendant's violations, Plaintiff is entitled to statutory damages in an amount to be determined at trial, actual damages according to proof, and costs and reasonable attorneys' fees.

## THIRD CAUSE OF ACTION

## NEGLIGENCE

### (Against Defendants First Franklin, MERS, Anchor, Cal-Western, and Smith)

72.     Plaintiff incorporates here each and every allegation set forth above.

73.     Plaintiff is informed and believes, and thereon alleges that Defendants Anchor and Smith owed a duty to the Plaintiff to perform acts as brokers of loans in such a manner as to not cause Plaintiff harm.

74.     Defendants Anchor and Smith breached their duty to the Plaintiff when they used their knowledge and skill to direct Plaintiff into a loan for which Plaintiff was not qualified based upon his income as stated in the documents provided to Defendants Anchor and Smith.

75.     Plaintiff is informed and believes, and thereupon alleges that Defendants Anchor and Smith further breached their duty to Plaintiff by directing him into a loan transaction that they may not have otherwise qualified for by industry standards, resulting in excessive fees paid by the Plaintiff and payments in excess of Plaintiff's ability to pay.

76.     Plaintiff is further informed and believes, and thereupon alleges that Defendants First Franklin, Cal-Western, and MERS owed a duty to the Plaintiff to perform acts in such a manner as to not cause Plaintiff harm.  Plaintiff is informed and believes, and thereupon alleges that Defendants breached their duty of care to the Plaintiff when they failed to maintain the original Mortgage Note, failed to properly create original documents, failed to make the required disclosures to the Plaintiff and instituted foreclosure proceedings wrongfully.

77.     Further, Plaintiff is informed and believes, and thereupon alleges that Defendant First Franklin and MERS breached their duty of care to the Plaintiff when they took payments to which they were not entitled, charged fees they were not entitled to charge, and made or otherwise authorized negative reporting of Plaintiff's creditworthiness to various credit bureaus wrongfully.

78.     As a result of Defendants' negligence, Plaintiff suffered and continues to suffer harm, and is entitled to damages according to proof and/or other relief as the Court deems just.

## FOURTH CAUSE OF ACTION

## VIOLATION OF REAL ESTATE SETTLEMENT PROCEDURES ACT

## 12 U.S.C. § 2605 et seq.

### (Against Defendant First Franklin)

79.     Plaintiff incorporates here each and every allegation set forth above.

80.     The Loan transaction between Plaintiff and Defendant is a mortgage loan covered by RESPA.

81.     A violation of RESPA is also made unlawful under California state law by Financial Code § 50505, which states: "[a]ny person who violates any provision of [RESPA] or

any regulation promulgated thereunder, violates this division [California Residential Mortgage Lending Act]."

82.     Plaintiff is not certain at this time exactly which of Defendants was actually the servicer of the Loan at any given time.  However, due to the conspiratorial nature of the misdeeds alleged herein, and due to Defendants' failure to properly advise Plaintiff regarding the roles and identities of the various entities that were purportedly handling his Loan at any given time, these allegations are made as to all Defendants.

83.     Defendant First Franklin violated RESPA at the time of the closing of the Loan subject to this Complaint by failing to correctly and accurately comply with the disclosure requirements provided therein.

84.     Defendant First Franklin violated RESPA, 12 U.S.C. § 2605(e)(2), by failing and refusing to provide a proper written explanation or response to Plaintiff's QWR.

85.     Plaintiff is informed and believes, and thereon alleges, that these Defendant First Franklin  has engaged in a pattern or practice of non-compliance with the requirements of the mortgage servicer provisions of RESPA as set forth in 12 U.S.C. §2605.

86.     As a result of Defendant First Franklin's failure to comply with RESPA, Plaintiff has suffered and continues to suffer damages and costs of suit.  Plaintiff is entitled to recover statutory damages, actual damages in an amount to be determined at trial, and costs and reasonable attorneys' fees.

**FIFTH CAUSE OF ACTION**

**BREACH OF FIDUCIARY DUTY**

**(Against Defendants Anchor, First Franklin, and Smith)**

87.     Plaintiff incorporates here each and every allegation set forth above.

88.     Defendants were agents for the Plaintiff by express and implied contract and by operation of law.

89.     Plaintiff is informed and believes, and thereon alleges that Defendant First Franklin directly ordered, authorized or participated in Defendants Anchor and Smith's tortious conduct.

90.     Plaintiff hired Defendants Anchor and Smith as his agents for the purpose of

obtaining a Loan to purchase the Property.

91.     Pursuant to an agreement between the parties, Plaintiff agreed to pay Defendants a commission from the proceeds of his Loan.

92.     Defendants, by and through their agents, owed a fiduciary duty to the Plaintiff to act primarily for his benefit, to act with proper skill and diligence, and not to make a personal profit from the agency at the expense of their principal, the Plaintiff.

93.     As Plaintiff's agents, Defendants owed Plaintiff a duty of loyalty and a duty to deal fairly with him at all times.

94.     Defendants willfully or recklessly breached their fiduciary duty and duty of loyalty by obtaining a mortgage loan for him that had unfavorable terms and that he could not ultimately afford, by not disclosing the negative consequences of said loan, by securing a secret profit for themselves, by not properly complying with TILA and RESPA requirements, and by engaging in unfair business practices.

95.     Defendants First Franklin and Smith, each through their own action, interfered with Defendant Smith's fiduciary obligations by offering Defendant Smith incentives to breach their fiduciary duty by means of creating and participating in a scheme that created an illusion to consumers that they are being informed of all of the material facts, when in fact they are not.

96.     Plaintiff has been damaged as a result of Defendants' breach, and is entitled to actual damages.

97.     Defendants consciously disregarded Plaintiff's rights, deliberately breaching their respective fiduciary duties, showing willful misconduct, malice, fraud, wantonness, oppression and entire want of care, thus authorizing the imposition of punitive damages pursuant to California Civil Code § 3294.

## SIXTH CAUSE OF ACTION

## FRAUD

## (Against Defendants First Franklin, MERS, Anchor, Cal-Western, and Smith)

98.     Plaintiff incorporates here each and every allegation set forth above.

99.     As alleged herein, Defendants Smith and Anchor made false representations to

Plaintiff regarding material facts, including but not limited to, interest rates, financing options, availability of refinancing, and Plaintiff's qualification for this loan, at the inception of this transaction, designed to fraudulently induce Plaintiff to enter into this transaction.

100.    As alleged herein, Defendant First Franklin regularly trained, directed, authorized and/or participated with mortgage brokers to implement this scheme, giving them monetary incentives to violate the borrowers' trust.

101.    As alleged herein, Defendant First Franklin misrepresented to Plaintiff that First Franklin has the right to collect monies from Plaintiff on its behalf or on behalf of others when Defendant First Franklin had no legal right to collect such monies.

102.    As alleged herein, Defendant MERS misrepresented to Plaintiff on the Deed of Trust that it is a qualified beneficiary with the ability to assign or transfer the Deed of Trust and/or the Note and/or substitute trustees under the Deed of Trust.  Further, Defendant MERS misrepresented that it followed the applicable legal requirements to transfer the Note and Deed of Trust to subsequent beneficiaries.

103.    As alleged herein, Defendant Cal-Western misrepresented to Plaintiff that Cal-Western was entitled to enforce the security interest and has the right to institute a non-judicial foreclosure proceeding under the Deed of Trust when they filed a Notice of Default on February 12, 2009.  In fact, Defendant Cal-Western was not a trustee, mortgagee or beneficiary, nor are they authorized agents of the trustee, mortgagee or beneficiary, nor are they in possession of the Note, or holders of the Note, or non-holders of the Note entitled to payment, as required by California Commercial Code §§ 3301 and 3309.  As a result, Defendant Cal-Western did not have the right to initiate foreclosure proceeding herein under California Civil Code § 2924 et seq.

104.    These material representations made by Defendants were false.

105.    Defendants knew that these material representations were false when made, or these material representations were made with reckless disregard for the truth.

106.    Defendants intended that Plaintiff rely on these material representations.

107.    Plaintiff reasonably relied on said representations.

108.    As a result of Plaintiff's reliance, he was harmed and suffered damages.  Plaintiff's

reliance on Defendants' false material representations was a substantial factor in causing Plaintiff harm.

109. Additional evidentiary facts constituting fraud in this matter are within Defendants' knowledge and possession.

110. Defendants, and each of them, conspired together to perpetrated the fraud alleged herein over the course of several years.

111. Defendants are guilty of malice, fraud and/or oppression, as defined in California Civil Code § 3294. Defendants' actions were malicious and done willfully, in conscious disregard of the rights and safety of Plaintiff in that the actions were calculated to injure Plaintiff. As such, Plaintiff is entitled to recover, in addition to actual damages, punitive damages to punish Defendants and to deter them from engaging in future misconduct.

## SEVENTH CAUSE OF ACTION

### VIOLATIONS OF CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200 et seq.

### (Against Defendants First Franklin, MERS, Anchor, Cal-Western, and Smith)

112. Plaintiff incorporates here each and every allegation set forth above.

113. Plaintiff is informed and believes, that Defendants' acts, as alleged herein, constitute unlawful, unfair, and/or fraudulent business practices, as defined in the California Business and Professions Code § 17200 et seq.

114. As a result of Defendants' wrongful conduct, Plaintiff has suffered various damages and injuries according to proof at trial.

115. Plaintiff seeks injunctive relief enjoining Defendants from engaging in the unfair business practices described herein.

116. Plaintiff further seeks restitution, disgorgement of sums wrongfully obtained, costs of suit, reasonable attorneys' fees, and such other and further relief as the Court may deem just and proper.

//

//

//

**EIGHTH CAUSE OF ACTION**

**BREACH OF CONTRACT**

**(Against Defendants Smith and First Franklin)**

117.    Plaintiff incorporates here each and every allegation set forth above.

118.    Plaintiff entered into an agreement with Defendants First Franklin and Smith, whereby Defendants promised to provide Plaintiff with an affordable loan.

119.    Plaintiff fully performed his duties under the contract with Defendants Smith and First Franklin.

120.    Defendants breached their agreement with Plaintiff by failing to exercise reasonable efforts and due diligence as promised, thus failing to provide Plaintiff with an affordable loan.  Defendants also breached their agreement with Plaintiff by committing wrongful acts, including but not limited to, intentionally or negligently failing to obtain payment and interest rates as promised, failing to submit an accurate loan application, failing to supervise, failing to provide loan documents for Plaintiff's review prior to closing, and failing to explain the loan documents to the Plaintiff.  Defendants further breached their duties when they failed to refinance the mortgage as promised, resulting in Plaintiff's payment increasing substantially shortly after the Loan agreement was signed.

121.    This breach by the Defendants has sent Plaintiff into foreclosure instead of financing his mortgage as agreed.

122.    As a result of Defendants' wrongful conduct, Plaintiff has suffered various damages and injuries according to proof at trial.

123.    Plaintiff further seeks restitution, disgorgement of sums wrongfully obtained, costs of suit, reasonable attorneys' fees, and such other and further relief as the Court may deem just and proper.

//

//

//

//

## NINTH CAUSE OF ACTION

## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

## (Against Defendants Smith and First Franklin)

124. Plaintiff incorporates here each and every allegation set forth above.

125. A duty of good faith and fair dealing was implied by law into the contract at issue in this action at its inception. Defendants' duties of good faith and fair dealing included, but were not limited to, the following: (1) Defendants had a duty to pay at least as much regard to Plaintiff's financial interests as to Defendants' financial interests; (2) Defendants had a duty to comply with all applicable laws in the State of California; (3) Defendants agreed to act in good faith and deal fairly with Plaintiff when they entered into the mortgage and accepted payments from Plaintiff. Defendants thereby assumed obligations of good faith and fair dealing toward Plaintiff and thereby agreed to abide by such obligations.

126. Nevertheless, Defendants breached the implied duty of good faith and fair dealing owed to Plaintiff by, among other things, performing acts and failing to act as alleged herein, and by failing to perform the duties specifically enumerated herein. Defendants further breached the duty of good faith and fair dealing by:

a. Failing to pay at least as much regard to Plaintiff's interests as to Defendants' interests;

b. Failing to disclose to Plaintiff the true nature of the loan that is the subject of this action;

c. Failing to give Plaintiff the requisite notice and disclosures.

127. In the absence of a reasonable basis for doing so, and with full knowledge and reckless disregard of the consequences, Defendants acted in bad faith toward Plaintiff by, among other things, failing to comply with all applicable laws.

128. Plaintiff is informed and believes, and thereon alleges that Defendants have a pattern and practice of similar bad faith conduct toward other borrowers who are similarly situated.

129. As a proximate result of Defendants' breaches of the covenant of good faith and

fair dealing alleged herein, Plaintiff has suffered damages, incurred attorneys' fees and costs to recover the Property, suffered a loss of reputation and goodwill, suffered emotional distress, and suffered other economic losses and damages in amounts not yet fully ascertained but within the jurisdiction of this Court.

130.    Defendants pursued said course of conduct intentionally and maliciously and in conscious disregard of the rights of the Plaintiff.  Further, Defendants' refusal to follow through with their duty to assist Plaintiff was made with the intent to intimidate, vex and harass Plaintiff so as to discourage him from pursuing his legal rights under the mortgage law.  In order to deter such conduct of Defendants in the future, and to prevent repetition thereof as a practice, by way of punishment and as example, Plaintiff prays that exemplary damages be awarded according to proof at trial pursuant to California Civil Code § 3294.

**TENTH CAUSE OF ACTION**

**WRONGFUL FORECLOSURE**

**(Against Defendants First Franklin, Cal-Western, and MERS)**

131.    Plaintiff incorporates here each and every allegation set forth above.

132.    California Commercial Code § 3301 specifically identifies the persons who are entitled to enforce a security interest by, among other means, instituting a foreclosure sale under a deed of trust.  The statute is exclusive rather than inclusive in nature, and those who are not identified do not have the right to enforce such an interest.

133.    Plaintiff is informed and believes, and thereon alleges that Defendants First Franklin, MERS, and Cal-Western were not, and are not, in possession of the Note, are not beneficiaries, assignees or employees of the person or entity in possession of the Note, and are not otherwise entitled to payment.  Moreover, Plaintiff is informed and believes, and thereon alleges that said Defendants are not "person[s] entitled to enforce" the security interest on the Property, as that term is defined in Commercial Code § 3301.

134.    In the Notice of Trustee Sale, Defendant Cal-Western claims that it was the duly appointed Trustee pursuant to the Deed of Trust but fails to identify the holder of the beneficial interest.  Plaintiff is informed and believes and thereon alleges that Defendants are not in

possession of the Note and are not entitled to enforce the security interest on the Property.

135. Said Defendants also failed to properly record and give proper notice of the Notice of Default, which apparently occurred on or about February 12, 2009. Said failures are in direct violation of the notice and recording requirements set forth in California Civil Code § 2923.5. As a result, Plaintiff was not properly informed regarding a pending substitution of trustee, and consequently could not exercise his rights to investigate the circumstances of the foreclosure proceedings.

136. In the instant action, Plaintiff sent a QWR to Defendant First Franklin, but to date has not received a proper response.

137. Said Defendants' failure to comply with the statutory requirements denied Plaintiff the opportunity to exercise his statutory rights, which the statute was specifically designed to protect.

138. Further, on or about October 3, 2008, the Emergency Economic Stabilization Act of 2008 ("EESA") was signed into law. In implementing EESA, the United States Department of the Treasury has instituted a number of programs, including, but not limited to, the "Making Homes Affordable" Program, Capital Purchase Program, and Capital Assistance Program. Pursuant to the authority provided by H.R. 1424 Title I Sec. 109-110, the United States Department of the Treasury has ordered that all recipients of capital investments under the Financial Stability Plan are required to commit to participating in mortgage foreclosure mitigation programs consistent with the guidelines promulgated by the United States Department of the Treasury and released as part of its Making Homes Affordable mortgage modification program.

139. Plaintiff is informed and believes and thereon alleges that some or all of the Defendants, pursuant to the United States Department of the Treasury Section 105(a) Troubled Asset Relief Program (TARP) Report to Congress, received monies in 2008 from the United States Government are purchases of troubled assets.

140. Those Defendants who received TARP funds are subject to the United States Department of the Treasury's modification program guidelines for the Making Homes Affordable Program. Said guidelines, promulgated on March 4, 2009, clearly require "[a]ny foreclosure

action ... be temporarily suspended during the trial period, or while borrowers are considered for alternative foreclosure prevention options. In the event that the Homes Affordable Modification or alternative foreclosure options fail, the foreclosure action may be resumed."

141. Defendants have failed to suspend the foreclosure action to allow the Plaintiff to be considered for alternative foreclosure prevention options.

142. As a direct and proximate result of said Defendants' wrongful actions, Plaintiff has suffered damages, including, but not limited to, direct monetary loss, consequential damages, and emotional distress.

143. In committing the wrongful acts alleged herein, said Defendants acted with malice, oppression and fraud. Said Defendants' willful conduct warrants an award of exemplary damages, in an amount sufficient to punish the wrongful conduct and to deter such misconduct in the future.

## DEMAND FOR JURY TRIAL AND PRAYER FOR DAMAGES

Plaintiff Kiamars Azizkhan demands a trial by jury.

WHEREFORE, Plaintiff prays for judgment and order against Defendants, as follows:

1. That judgment be entered in Plaintiff's favor and against Defendants, and each of them;

2. For an order requiring Defendants to show cause, if they have any, why they should not be enjoined as set forth below, during the pendency of the action;

3. For a temporary restraining order, preliminary and permanent injunction preventing Defendants, or anyone acting in concert with them, from collecting on the subject Loan and from causing the Property to be sold, assigned or transferred to a third party;

4. For an order stating that Defendants engaged in unfair business practices;

//
//
//
//

1      5.      For damages, disgorgement, and injunctive relief under California's common and

2              statutory law of unfair business practices;

3      6.      For compensatory and statutory damages, attorneys' fees and costs according to

4              proof at trial;

5      7.      For exemplary damages in an amount sufficient to punish Defendants' wrongful

6              conduct and deter future misconduct;

7      8.      For such other and further relief as the Court may deem just and proper.

8

9  DATED: November 4, 2009

10                                          Respectfully submitted,
                                            /s/ Sharon L. Lapin
11                                          SHARON L. LAPIN
                                            Attorney for Plaintiff Kiamars Azizkhan

12